UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF INDIANA, *ex rel.* YORK HOWZE, *Relator*, <br><br> Plaintiffs, <br><br> v. <br><br> SLEEP CENTERS FORT WAYNE, LLC <br><br> Defendant. | Case No. 1:11-CV-035 JD |

## OPINION AND ORDER

Before this Court is a motion to enforce a settlement agreement between York Howze ("Howze"), as Relator on behalf of the United States and State of Indiana, and Defendant Sleep Centers of Fort Wayne, LLC ("Sleep Centers"). [DE 134]. Sleep Centers filed its response to the motion to enforce the settlement agreement on September 8, 2015. [DE 135]. Both the United States and the State of Indiana have filed briefs opposing the enforcement of the settlement agreement. [DE 136, 137]. Howze filed a reply on September 30, 2015. [DE 138]. The matter is now ripe for ruling.

### I.    FACTUAL BACKGROUND

The procedural history of this case began over five years ago on October 21, 2010 when Howze filed Cause No. 1:10-cv-459 alleging race discrimination and retaliation against Allied Physicians Incorporated ("Allied") and Sleep Centers. On March 8, 2012, the parties entered into a Settlement Agreement and General Release for these allegations, which settled "any and all claims that ha[d] been made or could be made" against the Allied and Sleep Centers.

Accordingly, the parties filed a motion to dismiss pursuant to stipulation on July 2, 2012 and the case was dismissed with prejudice on July 10, 2012.

Parallel to this timeframe, on January 24, 2011, Howze filed a new case, under seal, against Allied and Sleep Centers as Relator for the United States of America and the State of Indiana based upon alleged violations under the federal False Claims Act ("FCA"), and its nearly identical state counterpart, the Indiana False Claims Act.[1] [DE 1]. Howze also alleged one count of wrongful termination. [*Id*.] An Amended Complaint was then filed May 11, 2011. [DE 4]. On March 12, 2012, the United States declined to intervene in this lawsuit. [DE 11]. On April 4, 2012, the State of Indiana declined to intervene in this lawsuit. [DE 15]. Howze's counsel then withdrew as attorney on July 9, 2012. [DE 32]. The Amended Complaint was then unsealed and served upon Allied and Sleep Centers. Count I of the Amended Complaint alleged violations under the FCA, Count II alleged conspiracy to submit false claims in violation of Indiana FCA, and Count III alleged a wrongful discharge claim brought pursuant to 31 U.S.C. § 3730(h). [DE 4]. Allied and Sleep Centers then filed a Motion to Dismiss Counts I and III of Howze's amended complaint. [DE 56]. Count III was dismissed under the doctrine of *res judicata* by Judge William Lee, as this claim had already been settled in the prior case, Cause No. 1:10-cv-459. [DE 73]. Judge Lee ruled Counts I and II remained viable. However, because Count III was dismissed, Allied was dismissed as a party to the instant action. [*Id*.] The case was referred for

---

[1] Since the Indiana FCA "mirrors the Federal FCA in all material respects," the analysis of the Federal FCA is equally applicable to Howze's Indiana FCA claims. *United States ex rel. Herron v. Indianapolis Neurosurgical Grp., Inc.*, No. 1:06-CV-1778-JMS-DML, 2013 WL 652538, at *7 (S.D. Ind. Feb. 21, 2013) (citing *Kuhn v. LaPorte Cty. Comprehensive Mental Health Council*, No. 3:06-CV-317-CAN, 2008 WL 4099883 (N.D. Ind. Sept. 4, 2008)). This Court has been presented with no authority to suggest that a substantive distinction between the federal FCA and Indiana FCA as it relates to the requirement of government consent to settle claims and the amount a relator can receive from any such settlement exists. Therefore, this Court will only discuss the federal FCA claims in this case.

mediation, which was unsuccessful. However, negotiations towards settlement between Howze and Sleep Centers continued through this time.

By late 2014 Howze and Sleep Centers had drafted a version of a settlement agreement ("Agreement"). The Agreement was not signed, however, and had not received formal approval from either the State of Indiana or the United States. The United States did note it was unable to consent to the Agreement, where it purported to dismiss the FCA claims, as these claims belong to the United States and not Howze. [DE 134-10].

In January of 2015, Counsel for Sleep Center motioned to withdraw, [DE 95], which the Court allowed on January 13, 2015. [DE 96]. New counsel for Sleep Center immediately repudiated the unsigned Agreement. On January 20, 2015, Howze motioned to request a hearing alleging a final settlement agreement had been reached by the parties. [DE 99]. On January 22, 2015 Sleep Center, by way of its new attorneys, responded. [DE 102]. Howze replied on January 28, 2015. [DE 106]. A status conference was then held on February 2, 2015. The case was set for another settlement conference, which was, again, unsuccessful. Judge Lee recused himself from the case on August 4, 2015. [DE 131]. The case was then reassigned to this Court. This Court held a status conference on August 13, 2015, and requested the parties brief the issue of whether or not the Agreement, if final, could be enforced.

For the following reasons this Court DENIES Howze's motion to enforce the purported Agreement.

## II. ANALYSIS

The FCA, 31 U.S.C. §§ 3729-3733, is an anti-fraud statute that imposes liability against any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the

Government." 31 U.S.C. § 3729(a)(7). Persons who violate the FCA are liable for civil penalties and treble damages, plus the costs incurred in bringing an FCA lawsuit. 31 U.S.C. § 3729(a). The government may itself bring a suit, or a private person may bring a suit in the name of the government as "relator." 31 U.S.C. § 3730(a), (b)(1); *see also United States ex rel. Chandler v. Cook Cty., Ill.*, 277 F.3d 969, 973 (7th Cir. 2002). An action brought by a relator is designated as a *qui tam* lawsuit. *Chandler*, 227 F.3d at 973. When a relator brings a *qui tam* suit, the relator is acting "on behalf of the United States government." *United States v. King-Vassel*, 728 F.3d 707, 711 (7th Cir. 2013).

When acting on behalf the Government, the relator must proceed step by step. First, the relator must serve the government a copy of the complaint, together with supporting evidence. 31 U.S.C. § 3730(b)(2). The government then has sixty days to decide whether it will intervene in the suit. *Id*. If the government declines to intervene, the relator may proceed in the suit on his or her own. 31 U.S.C. § 3730(b)(4)(B). If the relator is successful in obtaining judgment, the relator will be entitled to a share of the recovery, plus fees and costs. 31 U.S.C. § 3730(d)(2).

Before this Court is the purported Agreement dated November 13, 2014. [DE 134-14]. Howze seeks to enforce the Agreement, arguing, in part, there was a "meeting of the minds" sufficient to render the agreement final. [DE 134 p. 8-10]. This is not the issue before the court, however. The question is whether or not the Agreement, if final, could be accepted by this Court. The Agreement cannot be accepted.

    A. *Government consent was not obtained to settle FCA claim 31 U.S.C. § 3729*

The Agreement purports to settle "any and all claims under the False Claims Act 31 U.S.C[.] 3729, *et seq*.; the Indiana False Claims Act and Whistleblower Act I.C. 5-11-5.52, *et seq*. and Medical Fraud I.C. 35-42-5-7.1." [DE 134-14 p. 4]. Howze argues that 1) the

Government was apprised of the Agreement; 2) no Government interest is harmed by the Agreement; and 3) the Government should be denied veto authority where it failed to intervene consistent with the Ninth Circuit's interpretation of the consent requirement in FCA claims. Howze's first two arguments are irrelevant and, respectfully, this Court is not persuaded by the Ninth Circuit's interpretation of the plain language of the FCA's consent requirement.

As well established by the Supreme Court, "the starting point in any case involving the meaning of a statute, is the language of the statute itself." *Grp. Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 210 (1979) (citing *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 541 (1978)). In reading the language of the statute, Courts should "assume that the ordinary meaning of the language that Congress employed 'accurately expresses the legislative purpose.'" *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 164 (1985) (citing *Park 'N Fly Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985)). Section 3730(b)(1) of the FCA states that an FCA *qui tam* action "may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." This seemingly unambiguous language, however, has not been uniformly applied by all Circuit Courts.

The Ninth Circuit is the only Circuit Court to have held that the Government's consent is not required after the Government declines to intervene. *United States ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715 (9th Cir. 1994). In *Killingsworth*, the Ninth Circuit held that that the government's veto authority remained unreviewable during the sixty day period following the filing of a *qui tam* action. *Id*. at 722. After the sixty day period lapsed, however, if the Government had still declined to intervene, the Government's veto authority was limited to a review by the court for reasonableness. *Id*. To date, the Ninth Circuit is the only Circuit Court to have accepted this view.

5

The Fifth and Sixth Circuits have expressly rejected the Ninth Circuit's holding in *Killingsworth*. In *Searcy v. Philips Elecs. N. Am. Corp.*, the Fifth Circuit found that "[t]he statutory language relied on by the government is as unambiguous as one can expect," noting, "[u]nlike the *Killingsworth* court, we can find nothing in § 3730 to negate the plain import of this language." 117 F.3d 154, 159 (5th Cir. 1997). Likewise in *United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 339 (6th Cir. 2000), the Sixth Circuit held a *qui tam* action cannot be settled without the consent of the Government, even if the Government has declined to intervene. The Sixth Circuit argued that limiting the Government's consent to settle to the first sixty days frustrates the purpose of the FCA writing:

> "There is absolutely no statutory authority for the proposition that simply because the government decides not to expend the resources to proceed with an action itself, it thereby authorizes the relator to settle the government's claims in whatever manner he wishes. Indeed, such a construction would only force the government to unnecessarily intervene in *qui tam* cases and thereby frustrate the efficacy of the *qui tam* framework."

*Id*. at 343 n. 6 (internal citation omitted).

Recently this issue came before the District Court of the District of Columbia, and the Court sided with the Fifth and Sixth Circuits, declining to enforce a settlement over the Government's objection in *United States ex rel. Landis v. Tailwind Sports Corp.*, 98 F.Supp. 3d 8 (D.D.C. 2015). The Court in *Tailwind* did so stating "[w]hile it might seem unfair for the Government to be able to force a relator to continue to litigate non-intervened claims that he would prefer to settle, the broader purposes of the FCA are served at least to some extent by a plain reading of section 3730's consent provision." *Id*. at *11. As further noted by the Court in *Tailwind*, while the Supreme Court has not directly answered this question, it has indicated that the "Government's consent is required for the voluntary dismissal of non-intervened claims." *Id*. (citing *United States ex rel. Eisenstein v. City of New York*, *New York*, 556 U.S. 928, 932 (2009).

6

In the instant case, both the United States and the State of Indiana have asked this Court not to enforce the Agreement, as it dismisses FCA claims belonging to the government.[2] [DE 136, 137]. Howze's argument that the government was apprised of the agreement and suffers no harm is irrelevant where the determinative question is whether or not government consent is required to dismiss FCA claims. It is.

Howze has submitted DE 134-14 as the purported Agreement. In it, Howze, as relator, "irrevocably and unconditionally release[s]" Sleep Centers from "any and all claims under the False Claims Act 31 U.S.C. 3729, *et seq*.; the Indiana False Claims Act and Whistleblower Act I.C. 5-11-5.52, *et seq*. and Medical Fraud I.C. 35-42-5-7.1." [DE 134-14 p. 3]. As made expressly clear in the draft Agreement itself, [DE 134-14], and in the briefing, [DE 136, 137], the United States and the State of Indiana did not give their consent for Howze to settle their *qui tam* claims, but rather consented to a settlement of Howze's personal, 31 U.S.C. § 3730(h) retaliation claim.

This Court is inclined to follow the Fifth and Sixth Circuits, as well as the District Court of the District of Columbia, in their plain language reading of 31 U.S.C. § 3730, which reads in relevant part, "[t]he action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." 31 U.S.C. § 3730(b)(1). This reading of the statute is consistent with the policy of the FCA, where its purpose "is to enhance the Government's ability to recover losses sustained as a result of fraud against the Government."

---

[2] Sleep Centers filed supplemental authority on this issue in *United States ex rel. Thomas v. Lockheed Martin Aeroparts, Inc*., No 3:13-183, 2016 WL 47882 (W.D. Pa. Jan. 4, 2016) as support for the argument that government consent is required for a *qui tam* resolution. [DE 140 p. 2]. Howze filed a response arguing the issue is not whether the Agreement, if final, is enforceable, and argues the Court merely solicited the written consent of the United States before dismissal rather than required the consent of the United States. [DE 142]. Howze is mistaken. This Court requested the parties brief the issue of whether or not the Agreement, if final, could be enforced. This Court recognizes the persuasiveness of this non-binding authority. Independent of this authority, for the reasons explained below, this Court is persuaded to join in the Fifth and Sixth Circuits' interpretation of the FCA consent requirement.

S.Rep. No. 99–345, at 1 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5266. As the Sixth Circuit observed, "the power to veto a privately negotiated settlement of public claims is a critical aspect of the government's ability to protect the public interest in *qui tam* litigation" because otherwise "the public interest would be largely beholden to the private relator, who – absent 'good cause' government intervention – would retain sole authority to broadly bargain away government claims." *Health Possibilities*, 207 F.3d at 340-41. Moreover, "the United States is a real party in interest even if it does not control the False Claims Act suit," *Searcy,* 117 F.3d at 156 (citing *United States ex rel. Milam v. Univ. of Texas M.D. Anderson Cancer Ctr.,* 961 F.2d 46, 48–49 (4th Cir.1992)), as the "harms redressed by the FCA belong to the government" regardless of who guides the litigation. *Health Possibilities,* 207 F.3d at 340 (citing *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.,* 985 F.2d 1148, 1154 (2d Cir.1993)). Accordingly, this Court is persuaded by the plain language of the statute as well as the policy purposes behind the FCA to side with the Fifth and Sixth Circuits in their upholding the requirement for government consent to dismiss FCA claims. Where, as here, the Agreement attempts to dismisses FCA claims over the government's objection, this Court cannot enforce the Agreement.

In response to the requirement of government consent, Howze attempts to argue the United States' and State of Indiana's requested revisions would have been made had Sleep Centers not repudiated the Agreement. [DE 134 p. 10-11]. Presumably these revisions would not dismiss the FCA claims belonging to the United States and the State of Indiana, and only settle Howze's 31 U.S.C. § 3730(h) retaliation claim. Howze purports both governmental entities would have then consented to a revised draft. [*Id*.] This argument is unpersuasive. First, the Agreement Howze seeks to enforce does dismiss the FCA claims. Second, if the revised draft

would have excluded the dismissal of the FCA claims, Howze has no more claims left to settle. As noted above, Count III, or the 31 U.S.C. § 3730(h) retaliation claim, was dismissed by Judge Lee under the doctrine of *res judicata*. Accordingly, the 31 U.S.C. § 3730(h) claim is not before this Court, and as such this Court will not entertain Howze's argument that the Agreement was to settle a claim that was already dismissed from this case. Furthermore, this Court will not address Howze's argument that Sleep Centers settled the case because of the ongoing risk of appeal of the dismissed 31 U.S.C. § 3730(h) claim. [DE 134. p. 12-13]. This assertion is without support where the record establishes payment for settling the *qui tam* claims. [DE 134-2, 138-2, 138-6]. For these reasons this Court finds Howze's argument unpersuasive.

    B. *This Court cannot enforce the Agreement where 100% of the proceeds go to relator for settling a 31 U.S.C. § 3729 claim.*

Having determined the only claims Howze has left to settle are the FCA claims, the Agreement is still unenforceable. Even if this Court were to side with the Ninth Circuit's reading of the FCA and allow a settlement of the FCA claims over the government's objection, the Agreement could still not be enforced by this Court where 100% of the proceeds are awarded to Howze in violation of the plain meaning of 31 U.S.C. § 3730(d). Howze argues there is nothing in the statute that explicitly forbids the relator from receiving 100% of the proceeds from the claim where the government has disclaimed its interest. [DE 138 p. 10]. This Court disagrees.

    31 U.S.C. § 3730(d)(2) states in relevant part:

"If the Government does not proceed with an action under this section, the person brining the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The amount shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds."

In bringing an FCA claim, the relator is acting on behalf of the United States. *United States v. King-Vassel*, 728 F.3d 707, 711 (7th Cir. 2013). The "FCA provides that a relator is

9

entitled to a share of the proceeds recovered by the United States against the defendant," because "the relator's interest is not a direct interest in the defendant's property itself, but rather it is an interest in the United States' interest in that property." *United States v. Bisig*, No. 100CV335JDTWTL, 2005 WL 3532554, at *7 (S.D. Ind. Dec. 21, 2005).

In the instant case, the Agreement purports to give Howze 100% of the proceeds from the settlement. As noted above, Howze's only remaining claims are FCA claims. These claims belong to the United States and the State of Indiana, and as such Howze is only entitled to a portion of these claims, not 100%. The Agreement is not enforceable.

In response to the clear language of 31 U.S.C. § 3730(d), Howze argues there is nothing in the statute that prohibits the government from disclaiming its interest,[3] which, according to Howze, the government has done. But the government did not disclaim their interest in their FCA claims, the only viable claim remaining. The United States and the State of Indiana only disclaimed their interest in a settlement payout for the 31 U.S.C. § 3730(h) claim. [DE 136 p. 2, DE 137 p. 2]. In fact, the United States made it very clear in an earlier draft of the agreement that the agreement needs to "specifically say that $90,000 is for his 3730(h) claim and $75,000 is for attorney fees. The point is to make it clear that no portion of the recovery is for claims belonging to the US under 3729." [DE 134-10]. To argue the government disclaimed its interest in its own claims is contrary to the record. Furthermore, Howze's argument misses the point. Whether or

---

[3] Howze cites *United States ex rel. Smith v. Gilbert Realty Co.*, 9 F.Supp. 2d 800 (E.D. Mich. 1998) as authority for this point. This case is readily distinguishable. In *Gilbert Realty*, an FCA claim was settled for $54,140 and the proceeds were to be split between the relator, who was to receive 30% of the proceeds, and the government, who was to receive 70% of the proceeds. Without notice to the relator, the government filed a satisfaction of judgment after only $18,000 had been paid. The government offered the relator 30% of $18,000. The government, having recognized its satisfaction of judgment, without any consultation of the relator, hurt the relator significantly offered as a "conciliatory measure" to give the full $18,000 to relator. The court ruled the relator be paid in full from the $18,000. This case does not stand for Howze's assertion that a government may waive its interest as it desires, and therefore waive 100% of its interest in its qui tam claims. [DE 139 p. 11]. This case reaffirms that the relator is only entitled to a portion of proceeds from the any settlement of *qui tam* claims.

not the government disclaimed interest in the settlement proceeds is irrelevant where Howze, as relator, cannot receive 100% of the proceeds for settled FCA claims. To the extent Howze is arguing the Agreement is enforceable where the settlement is attributable to the 31 U.S.C. § 3730(h) claim, this Court will not consider the argument. As explained above, the 31 U.S.C. § 3730(h) claim was dismissed from this action. The only claims left are the FCA claims.

### III.   CONCLUSION

For the foregoing reasons this Court DENIES Howze's motion to enforce the Agreement.

SO ORDERED.

ENTERED: April 6, 2016

                                                       /s/ JON E. DEGUILIO
                                                       Judge
                                                       United States District Court